Murdock *v.* Memphis & Ohio R. R. Co.

7b 557
d110 651

7b 557
117 320

MARY C. MURDOCK *v.* MEMPHIS & OHIO R. R. CO.

1. MARRIED WOMEN. *Probate and registration of deeds made by married women living in other States. What necessary. Non-residents. Comity of States.* A conveyance of land in this State by a married woman living in another State, is valid when made upon the certificate of a notary public, under his seal of office, that she, upon privy examination, acknowledged that her deed was freely and voluntarily executed, and without compulsion on the part of her husband. Such a deed is properly probated and acknowledged for registration, and when so registered the title passes.

Facts: A deed of a married woman, executed in 1847, with a certificate of acknowledgment thereon containing the following—" and she being by me examined, out of the presence and hearing of her husband, whether she does execute and acknowledge the same freely, voluntarily, and without being induced to do so by fear or threats of, or ill usage by, her husband, or by fear of his displeasure, declareth and saith that she does"—under the seal of a notary public in Maryland, was properly registered in Tennessee, and passed the title to the purchaser.

Cases cited: Perry *v.* Calhoun, 8 Hum., 556; Mount *v.* Kesterson, 6 Col., 452; Rainey *v.* Gordon, 6 Hum., 345.

Acts cited and construed: 1715, ch. 28; 1751, ch. 3; 1813, ch. 79, sec. 1; 1820, ch. 20, sec. 2; 1831, ch. 90, sec. 9; 1833, ch. 92; 1839, ch. 26, sec. 6.

2. SAME. *Deeds. Probate. Execution.* Distinction between execution of deeds and their probate or acknowledgment for registration, discussed, citing authorities above.

Murdock *v.* Memphis & Ohio R. R. Co.

3. SAME. *Same.* The sufficiency of the execution of the deed must be determined by the laws of Tennessee.

4. SAME. *Separate estate. Tenants in common.* Where two tenants in common—one of them a married woman, having a fee simple estate in her undivided interest in the land—agree upon a division of the premises, and the co-tenant with her husband join in a deed conveying one of the shares in severalty to her, such deed does not impose the character of a separate estate in the land so conveyed to the married woman. It was without consideration, and the husband employed no express terms necessary to impose upon the property the character of a separate estate. The husband had the same interest in the property after the conveyance as before. A separate estate cannot be created by implication. The wife had the absolute fee simple estate, and could well convey it.

Case cited: Powell *v.* Powell, 9 Hum., 477.

---

FROM SHELBY.

---

Appeal from the Chancery Court. R. J. MORGAN, Chancellor, by interchange.

HEISKELL, SCOTT & HEISKELL and G. W. WINCHESTER for complainant.

STEPHENS & SMITH, SMITH, KITTREDGE & HAMBLEN, BEECHER & BELCHER and HUMES & POSTON for defendants.

NICHOLSON, C. J., delivered the opinion of the court.

Complainant is a married woman, and seeks, by her next friend, to have her title to certain real estate in Memphis recognized and adjudged, upon two grounds: First, because her deed to the land, made by her husband and herself in 1847, was void for want of a proper certificate of her privy examination.

Second, because she had no power under the deed, which communicated to her a separate estate in the land, to sell and make title to it.

*First.* At the date of her deed, which was in 1847, she was a citizen of Maryland, and the deed was executed in that State, and acknowledged in pursuance of the law of that State providing for the probate and registration of lands of married women. The certificate on the deed, after stating that Thomas Murdock and his wife, Mary Murdock, appeared before the notary public, and in his presence signed and sealed the deed, and acknowledged the same to be their respective act and deed, states that "the said Mary Murdock did sign, seal and deliver said indenture before me, out of the presence and hearing of said husband, and she being by me examined, out of the presence and hearing of said husband, whether she does execute and acknowledge the same freely, voluntarily, and without being induced to do so by fear or threats of, or ill usage by, her husband, or by fear of his displeasure, declareth and sayeth that she does."

The deed was dated October 11, 1847, and on the same day the acknowledgment and privy examination took place, and was filed for registration in Shelby county on the 24th of January, 1849. The purchaser under the deed and those claiming under him have held the land adversely to the present time.

The objection taken to the certificate of the notary public is, that it does not pursue the form prescribed by our statutes—especially in this, that it does not

state that the married woman acknowledged the execution of the deed "understandingly," as required.

This objection rests upon the assumption that the form prescribed for the certificate in such cases by our act of 1833 is to be pursued, at least substantially, whether the deed is executed in this State or in some other State. If this assumption is well founded, then we are of opinion, under our decisions, that the omission of the word "understandingly" in the certificate is fatal to its sufficiency and validity. It is required that the acknowledgment of the deed should be made with a knowledge of what she is doing—that is, understandingly; and under this requirement of the law, if the deed had been executed in Tennessee, we should be compelled to hold it a nullity as to the married woman.

But was it intended by the Legislature that the provisions of law referred to should apply as well to deeds of married women executed in other States as in our own State? An examination of the legislation on this subject develops the fact that no form of certificate, as to the requisites to constitute a valid deed by a married woman for the conveyance of her land, was prescribed until the act of 1833, ch. 92. A conveyance by deed with privy examination was recognized as early as 1715, and declared to be as valid and effectual, to all intents and purposes, as if the same had been done by fine and recovery, and was, that a private examination of the married woman, by some proper official, furnished satisfactory evidence that she acknowledged the deed freely.

Murdock v. Memphis & Ohio R. R. Co.

In 1751 and in 1813 this mode of conveyance by deed, with private examination of married women in other States, owning lands in this State, was recognized as valid, but no form of certificate, as to the evidence that the deeds were freely acknowledged, was prescribed.

In 1831, the Legislature deemed it proper to prescribe the forms of certificates to be made when deeds by persons *sui juris* were probated or acknowledged; but no such form was prescribed as to the probate or acknowledgment of deeds by married women.

No specific provision was made in the act of 1831, ch. 90, as to deeds of married women made in Tennessee, nor as to those made in other States, unless the 9th section be construed to embrace deeds of married women, as well as deeds of persons *sui juris.* But as to deeds of married women made in Tennessee, this omission was remedied in 1833, by an act passed to annul the act of 1831. This act prescribes the form of the certificate to be made on the deed of a married woman, and in its terms the provisions of the act are confined to deeds made and acknowledged in Tennessee. There is nothing found, either in the act of 1831, which has reference to deeds of persons *sui juris*, or in the act of 1833, which has reference to deeds of married women, which indicates any purpose by the Legislature to apply the provisions of either of these acts to deeds executed in other States, whether by persons *sui juris* or by married women. On the contrary, by the 9th section of the act of 1839 it is declared, that "all deeds or convey-

36—VOL. 7.

ances for land made without the limits of this State, shall be proved as heretofore, or before a notary public, under his seal of office"; and by the act of 1839, the acknowledgment of all such deeds may be made before a notary public, or commissioner appointed by the Governor.

It is therefore clear that the Legislature intended to provide exclusively for deeds made within the State by the acts of 1831 and 1833, expressly leaving the registration of deeds made without the State, whether made by persons *sui juris* or by married women, to be governed by the former laws, except that they might be probated or acknowledged before a special commissioner or notary public.

It remains, then, to inquire whether the certificate on the deed in question is in conformity with the laws prior to 1831, as amended by the act of 1833 and by the act of 1839.

It is not controverted that the certificate on the deed in question is in substantial conformity with the laws of Maryland, and it is maintained for defendants that this is sufficient, under the act of 1820, ch. 20, sec. 2, which provides that "all deeds or mesne conveyances for and within this State which shall have been made or executed, or which may hereafter be made and executed, by grantors or bargainors living in other States, such deeds or mesne conveyances shall be admitted to registration in any county in this State upon the probate or acknowledgment of such deeds or mesne conveyances taken in pursuance of the laws of the State where the grantor or bargainor or witnesses to such deeds may live."

Murdock *v.* Memphis & Ohio R. R. Co.

It is obvious that the language of this section is sufficiently comprehensive to embrace deeds, whether made and executed by persons *sui juris* or by married women—"all deeds or mesne conveyances made and executed." The deed from Murdock and wife was made and executed by them in Maryland for land in this State, and it has on it the certificate of probate or acknowledgment, in pursuance of the laws of Maryland, and upon this certificate it was registered in Shelby county in 1849. Why, then, was it not a valid deed, passing a good title to Newly, the purchaser?

It is answered for complainant, that the act of 1820 declares, by its title, that it was only intended "to provide for the *registration* of certain deeds and conveyances," and that it has no reference to the *execution* of such deeds. There is certainly a wide distinction between the *execution* of deeds and their *probate* or *acknowledgment* for registration. In cases of deeds by persons *sui juris*, they are executed by signing and delivery, and thereby, as between the parties, the title passes; but probate or acknowledgment is necessary to perfect the title by registration as to other persons. In relation to deeds by married women, they are not executed by mere signature and delivery; the signature is a nullity unless made or acknowledged upon private examination; hence privy examination is part of the process of execution of deeds by married women. For the purposes of registration there must be the evidence of signature by the husband, which may be either by probate or ac-

Murdock *v.* Memphis & Ohio R. R. Co.

knowledgment; and also the evidence of signature and privy examination of the wife, which can only be by her acknowledgment on privy examination.   This distinction between the execution of a deed and the probate or acknowledgment of it for registration, is clearly stated in the case of *Perry* v. *Calhoun*, 8 Hum., 556, and in *Mount* v. *Kesterson*, 6 Col., 452.   The act of 1820 was intended to do no more than to provide for the registration of such deeds, made or executed in other States, as have been properly probated or cknowledged for registration in those States in pursuance of their laws; but it was not intended to declare such deeds properly executed so as to pass the titles, whether executed in accordance with the laws of Tennessee or not.   If the deeds were so executed as to pass good titles according to our laws, then the act intended to provide that their registration should take place upon probate or acknowledgment in pursuance of the laws of the States in which they were executed.   It follows that the act of 1820 furnishes authority for the registration of the deed in question, but none as to the sufficiency of the execution thereof in Maryland, to pass the title.   The sufficiency of the execution must be determined by the law of Tennessee, and not by the law of Maryland, unless some statute of Tennessee has so enacted. Story on Confl. Laws, sec. 435 and note.

But it is argued for defendants, that if the operation of the act of 1820 is limited to the evidence on which deeds made in other States are admitted to registration in this State, the acts of 1813, ch. 79,

sec. 1, and 1839, ch. 26, sec. 6, make provision, not only for the evidence on which deeds of married women made in other States may be admitted to registration in this State, but also for the evidence on which the titles in such cases shall pass.

An examination of these acts is necessary for the settlement of this question.

By the act of 1813, it is enacted that "it shall and may be lawful to take the probate and acknowledgment of deeds made by husband and wife, for the sale and transfer of lands belonging to the wife, before any court of record in this State; and where said grantors reside beyond the limits of this State, before any court of record in another State or Territory; and for such court to examine, apart from her husband, such *feme covert*, whether she executed the same freely and voluntarily." And after providing for the appointment of a commissioner to examine aged or infirm married women, and receive their acknowledgment of such deeds, the act proceeds: "Which commission and return annexed to said deed or deeds, with the certificate of private examination, as the case may be, certified under the seal of said court, shall be registered in the county where said land lies, and shall be good and effectual in law and equity to pass said estate of such *feme covert*, in the same manner as if such acknowledgment or probate and private examination had taken place in the court of the county where said land lies."

The language of this act is not limited, like that of 1820, to evidence of probate or acknowledgment

on which the deeds may be registered, but it pro-
vides expressly that the certificate "shall be good and
effectual, in law and equity, to pass said estate of
such *feme covert.*" No form for this certificate is
prescribed. It is simply a certificate that the *feme
covert*, on private examination before a court of record,.
acknowledged that she executed the deed freely and
voluntarily. Such certificate shall not only entitle the
deed to registration, but pass the title.

By the act of 1839, after providing that deeds,.
powers of attorney and other instruments executed be-
yond the limits of the United States, may be proved
or acknowledged before a notary public, who shall
certify the same under his seal of office, &c.; and
as to deeds executed in other States, before a com-
missioner appointed by the Governor, the act proceeds:.
"Sec. 6. Or when any *feme covert* shall be a party
to any of the foregoing instruments, if the same be-
for real estate, her privy examination and acknowl-
edgment may be taken before the same officer or
court who, under the foregoing sections, has authority
to take the probate or acknowledgment of deeds, . .
which examination and acknowledgment shall be certi-
fied and registered as in other cases, and shall have-
full force and effect to pass the title or confer. the
power intended to be conveyed."

This act, like that of 1813, not only makes the
certificate of privy examination sufficient for purposes
of registration, but it makes the certificate and regis-
tration effectual for passing the title.

By the act of 1813, the certificate was to be made-

of the acknowledgment and private examination before a court of record, but this act makes the probate and acknowledgment before a notary public or special commissioner as effectual as if it had proceeded from a court of record. No form of certificate is prescribed in the act of 1839, nor, indeed, does it specify the character of the private examination; nor was this necessary, as these words, *ex vi termini,* mean an acknowledgment that she freely and voluntarily executed the deed, being examined apart from her husband. *Rainey* v. *Gordon,* 6 Hum., 345.

This examination of the statutes of 1813 and 1839 brings us to the conclusion that the deed of a married woman executed in another State, and probated and acknowledged upon private examination of the wife that she executed the same freely and voluntarily, upon the certificate of a court of record or a notary public, under his seal of office, that such acknowledgment was made upon private examination, separate and apart from her husband, may be legally registered in the county where the land is situated, and when so registered, the title is effectually divested out of the *feme covert.*

The remaining question is, does the certificate on the deed in question contain the statements necessary to entitle it to registration and to pass the title?

We have already seen that the act of 1833, which prescribes the form of the certificate, is restricted in its terms to the deeds of married women executed in the State. We have also seen that in none of the acts passed specially in reference to the evidence on

which deeds of married women in other States are to be registered, and to pass title, has the Legislature thought proper to prescribe the form of the certificate to be endorsed on the deed. What, then, must such certificate contain in order that it may be effectual for registration of the deed and the passing of the title?

By reference to the act of 1715, ch. 28, we find that the certificate required is, that the *feme covert* having been first privately examined, "acknowledgeth the same freely," and this "shall be good and effectual against the husband and wife."

By the act of 1751, ch. 3, the language is, "the wife being first privily examined before the chief justice, etc., whether she doth voluntarily assent thereto, and registered, shall be as valid in law to convey all the estate of the wife, as if done by fine and recovery, or any other ways or means whatever."

By the act of 1813, the language is, "and for such court to examine, apart from her husband, such *feme covert,* whether she executed the same freely and voluntarily." This act adopts the form of the commission prescribed in the act of 1751, to be used by commissioners appointed by court to examine aged or infirm married women, and the direction is as follows: "Privily, and apart from her husband, examine her whether she executed said conveyance freely and of her own accord, without fear or compulsion of her husband."

The next act in which the Legislature has defined the meaning of the private examination of a *feme*

*covert,* is that of 1833, ch. 92. The direction to the clerk is as follows: "To examine the wife, privily and apart from her husband, touching her voluntary execution of the same, and if she acknowledges or states that she executed the same freely and voluntarily, and without any compulsion on the part of her said husband, then and in that case" the clerk shall endorse the form prescribed on the back of the deed, which form is as follows: "And A. B. (the *feme covert*), having also personally appeared before me, privately and apart from her husband, the said —— acknowledged the execution of said deed to have been done by her freely, voluntarily and understandingly, without compulsion or restraint from her said husband, and for the purposes therein expressed."

It is observed that the Legislature directs the clerk as to the specific interrogatories to be propounded to the *feme covert,* whether she executed the deed freely and voluntarily, and without any compulsion on the part of her husband. Upon her answers he is required to make the certificate required, which was of course intended to embody the result of the examination. It was assumed by the Legislature that when the *feme covert* acknowledges that she executed the deed freely and voluntarily, and without any compulsion on the part of her husband, she necessarily meant that she did so "understandingly," and "for the purposes therein expressed," and hence the clerk is required to insert these words. We think it clear that if the Legislature had prescribed no form of certificate to be signed by the clerk, a certificate by him that

"upon examination of the wife privately, and separately and apart from her husband, she acknowledged that she executed the deed freely and voluntarily, and without any compulsion on the part of her husband," would have been sufficient. Such certificate would have embodied substantially the definition of a privy examination, as found in all the legislation on the subject, and in almost the exact language used in the act of 1751 already quoted. But the Legislature, upon considerations of public policy, have chosen to prescribe a form of certificate, and made it a rule of property, and for that reason the courts have felt constrained to adhere closely to it in regard to deeds made in our own State, to which the statute has reference. As to deeds of married women made out of the State, it has not been deemed necessary by the Legislature, until the Code in 1858, to adopt the same form of certificate; but as to such deeds, we are left to the law already in existence made specially to govern their probate and acknowledgment for registration and passing title.

We have found from our investigation of the statutes, that, upon the certificate of a notary public, under his seal of office, that a *feme covert,* upon privy examination, acknowledging that her deed was freely and voluntarily executed, and without compulsion on the part of her husband, such deed is properly probated and acknowledged for registration, and when registered, that the title passes.

We now turn to the certificate on the deed in question, to determine whether it is properly probated

and acknowledged according to our laws. We find it made by a notary public, under his seal of office. His examination of Mary Murdock, the *feme covert*, is certified as follows: "And she being by me examined, out of the presence and hearing of said husband, whether she does execute and acknowledge the same freely, voluntarily, and without being induced to do so by fear or threats of, or ill usage by, her husband, or by fear of his displeasure, declareth and saith that she does." This certificate not only contains the general words, "freely and voluntarily," which of themselves constitute a good definition of a privy examination, according to the acts of 1715, 1751 and 1813, but to exclude all doubt on the sufficiency of the examination, the certificate shows that the deed was executed and acknowledged by the wife "without being induced to do so by fear of, or ill usage by her husband, or by fear of his displeasure." The language of the certificate is quite as satisfactory as if it had declared that she executed and acknowledged the deed freely, voluntarily and understandingly, for all this is fairly implied by the language used; nor does the *feme covert* deny in her bill that it was done understandingly.

We are, therefore, of opinion that the deed was made and executed, and probated and acknowledged, in pursuance of the laws of Tennessee, and that it was properly registered and passed the title to the purchaser.

*Second.* It is insisted for complainant that her interest in the land conveyed to Newly by her deed

was her separate estate, and that as the deed which communicates to her title, contains no authority for the sale thereof by her, that her attempt to convey is a nullity.

It appears in evidence that in the division of the real estate of Wm. Winchester, deceased, situated in Shelby county, the shares of J. Mason Campbell and Mary Murdock—they being entitled to the share of Rebecca Campbell, a daughter of Wm. Winchester—were allotted to them together, making them tenants in common of said share. It further appears that in August, 1842, they agreed upon a division of the lot, and executed conveyances, so that each should hold the portion so agreed upon in severalty. Thos. Murdock, the husband of Mary Murdock, joined in the conveyance with J. Mason Campbell, although it is stated in the deed that he had no interest in the premises save as the husband of Mary Murdock. Campbell and Thos. Murdock convey to Mary Murdock all their interests, legal and equitable, her heirs and assigns forever, in fee simple, and they gave a general warranty of title.

It is argued that under the provisions of this deed Mary Murdock took a separate estate, which, under our decisions, she could not convey, as there is no provision in the deed authorizing her to convey. The deed purports on its face to convey to her a fee simple estate—the same estate that she had in the premises as tenant in common with Campbell. There is nothing in the language of the deed indicating that she was to hold it as separate property.

It requires express terms to impose upon the property the character of a separate estate. The fact that her husband joins in the conveyance, when it appears that he had no other than the marital interest and that the conveyance was voluntary, cannot have the effect, by mere implication, of converting the title into a separate estate.

The case of *Powell* v. *Powell,* 9 Hum., 477, was in reference to personal property, and then the conveyance was for a valuable consideration. It has no application to the present case.

We are of opinion that Mrs. Murdock had the absolute fee simple estate, and could well convey it.

Upon the whole case, we hold that there is no error in the decree below, and affirm it.

Upon application for rehearing, NICHOLSON, C. J., said:

We have considered the question presented on application for rehearing, in connection with the authorities to which our attention has been called.

It appears that Mary Murdock and her brother, Judge Campbell, were tenants in common of the lots in controversy. For the purpose of partition, they divided the lots and executed deeds of release, or of conveyance, to each other, the husband of Mary Murdock joining in the conveyance from Campbell to Mary Murdock. The question is, whether this conveyance by Murdock of his interest in the lot to his

wife had the effect to convert any part of her title into that of an estate for her sole and separate use. All that the husband does is to join with Campbell in the conveyance; he does not state what interest he had or what interest he conveyed, nor that whatever he had was to be held by her to her sole and separate use. She had the fee simple title before, and it is too clear for argument that that title was in no respect altered by the conveyance of her husband's marital interest, if he had any, and uniting it with her fee simple absolute title.

There are cases, especially as to personal property, where a husband can convey to his wife, and if the intention can be shown that the conveyance was for her sole and separate use, the husband will be held afterwards to be her trustee. But these authorities have no bearing upon this case. Here there is nothing from which it can be inferred that the husband intended his interest, whatever it was, should be held as separate estate of his wife. If the joining of Murdock with Campbell was anything more than an unnecessary ceremony, we suppose it was done under the assumption that his marital right being incident to the tenancy in common of his wife, and therefore extending to her interest in the entire lot, it was deemed proper that he should join by way of showing that his right was not to be an obstacle to the partition. But whatever was the object, we think it clear that his marital right attached as well after as before the conveyance, and that his wife continued to be the owner in fee of the lot assigned to her, and

that the statutory mode of conveyance was the same afterwards as before.

On every view, we are satisfied with the opinion already announced, and disallow the application.